BERNARD HUGHES

v.

WILLIAM J. NELSON and others.

1. If on the transfer of negotiable paper an endorsement is omitted through accident, mistake or fraud, a good title will pass in equity by mere delivery.

Hughes *v.* Nelson.

2. The fact that a party has set up in a suit at law matters which are grounds of equitable relief only, will be no bar to his right to relief in a court of equity.

3. A judgment of a court of law will not conclude an inquiry it cannot make, nor cut off a remedy it cannot administer.

On demurrer.

*Mr. J. H. Jackson,* for demurrants.

*Mr. Charles H. Hartshorne,* for complainant

THE VICE-CHANCELLOR.

The defendants deny that the bill shows a good cause of action. The bill avers that two of the three defendants made their note payable to the order of the third, for his accommodation, who passed it to the complainant in exchange for the complainant's note. The defendant sold the complainant's note and appropriated the proceeds. Both notes bore the same date, were for the same amount, and payable at the same time. The complainant agreed to make the exchange upon the defendant's promise that he would endorse the note he held to the complainant, but when he handed it over he omitted to do so. The omission was accidental. The complainant received it before maturity. After the notes fell due, the complainant was compelled to pay his; the other was not paid. A week or two after its maturity, the complainant delivered it to the defendant, requesting him to have the other two defendants (the makers) to pay it or renew it. He surrendered it to the makers, representing that he had not used it, and they destroyed it. Subsequently the complainant brought an action at law, on the note, against the three defendants, which resulted in a judgment for the defendants, the complainant being unable to show a title to the note which the tribunal where he sought his remedy could recognize.

Two questions are raised by the demurrer: First, Did the delivery of the note to the complainant, under the circumstances stated, constitute him, in equity, an endorsee; and, second, if it did, Is he barred of his remedy, in equity, by the judgment at law? At law, it is clear, a written endorsement is absolutely indispensable to the transfer of title to negotiable paper; but a much more liberal rule prevails in equity. In equity a chose in action, even when it consists of a bond and mortgage, may be assigned by mere delivery and without any writing whatever. *Galway* v. *Fullerton*, 2 *C. E. Gr.* 394; 2 *Story's Eq. Jur.*, § 1047. And negotiable paper, transferred in the same mode, will, in equity, confer upon the transferee all the rights which, at law, he would acquire by a written endorsement. Judge Story says: "If, by mistake, accident or fraud, a note has been omitted to be endorsed, upon a transfer, when it was intended that it should be, the party may be compelled by a court of equity to make the endorsement." *Story's Prom. Notes*, § 120; 1 *Story's Eq. Jur.* §§ 99*b*, 729. And in *Chitty on Bills* (11 Am. ed. 203) it is said: It has been adjudged, that if a trader delivered a bill for a valuable consideration to another previously to an act of bankruptcy, and forgot to endorse it, he might endorse it after his bankruptcy; (*Smith* v. *Pickering*, *Peake's Cases*, 50; *Anon.*, 1 *Camp.* 492; *Rolleston* v. *Herbert*, 3 *T. R.* 411); and if he and his assignees refused, they might be compelled to do so by bill in equity (*Ex parte Greening*, 13 *Ves.* 206; *Ex parte Mowbray*, 1 *Jac. & Walk.* 428; *Ex parte Rhodes*, 3 *Mont. & Ayr.* 217; *Watkins* v. *Maule*, 2 *Jac. & Walk.* 243). In the case last cited, the note had been made by the drawer for the accommodation of the payee, who negotiated it, but omitted to endorse it. The master of the rolls, in speaking to the point under discussion, said: "When a note is handed over for a valuable consideration, the endorsement is mere form; the transfer for consideration is the substance; it creates an equitable right and entitles the party to call for the form. The other party is bound to do that formal act, in order to substantiate the

Hughes *v.* Nelson.

right of the party to whom he has transferred it." Equity looks upon that as done which ought to have been done. There can be no doubt, upon the facts admitted by the demurrer, that the complainant passed his note to the defendant, believing that a valid title to the other note had been made to him. That was the consideration which prompted him to lend his note to the defendant, and the only thing he was to receive for it. Equity will treat the transaction as vesting him with the rights which, according to the contract, he was to have. In my opinion, the delivery of the note, under the circumstances stated, constituted the complainant an endorsee, in equity, with all the rights of a *bona fide* holder for value before maturity.

Is he barred by the judgment at law? His right to the note was purely equitable; a legal title could not be acquired without writing. Having simply an equitable right, he was without remedy in a common law tribunal, but he attempted to avail himself of his right there, and failed. Does that adjudication bar his remedy here? I think it is very clear it does not. He failed there because that tribunal could neither enforce nor recognize his title. It was only authorized to enforce his legal rights; it was not competent to enter upon an inquiry whether or not he was the equitable owner of the note. It is obvious, its adjudication does not conclude an inquiry it could not make, nor cut off a remedy it was incompetent to administer. The authorities on this point are decisive. Where the party has equitable rights, not cognizable in a court of law, which would in a court of equity have prevented such an adjudication as was made in the court of law, the judgment will interpose no obstacle to redress in equity, since the court of law had no proper jurisdiction of the subject matter forming the basis of redress in equity. 2 *Story's Eq. Jur.*, § 1573. Equity will relieve a party against a judgment at law when its justice can be impeached by facts, or on grounds of which the party seeking its aid could not have availed himself at law; or, as stated by Chief Justice Mar-

shall, in *Marine Ins. Co.* v. *Hodgson*, 7 *Cranch* 335, "Any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, will justify an application to a court of chancery." *Cairo and Fulton R. R. Co.* v. *Titus*, 12 *C. E. Gr.* 106. This statement of the rule was approved by the court of errors and appeals (1 *Stew.* 270), and the rule itself has been repeatedly recognized by this court *Kinney* v. *Ogden's adm'r*, 2 *Gr. Ch.* 171; *Power's ex'rs* v. *Butler's adm'r*, 3 *Gr. Ch.* 470; *Reeves* v. *Cooper*, 1 *Beas.* 225. The present chancellor enforced it in *Smalley* v. *Line*, 1 *Stew.* 348. It was there distinctly held, that the fact that a party has set up in a suit at law matters which are grounds of equitable relief only, is no bar to his right to relief in this court. In that case, it appeared, equitable rights had been set up as a defence in an action at law, but the principle is the same whether the equitable rights have been urged as a defence or asserted as a ground of action, for they are unavailable at law for either purpose.

