ATLANTIC CITY RAILROAD COMPANY

*v.*

ALFRED JOHANSON et al.

[Decided January 16th, 1907.]

1. This court will enjoin the execution of a judgment at law, rendered in an action of ejectment, when it appears that the defendant in the legal action had an equitable estate in the *locus in quo* which was sufficient to afford him equitable protection against dispossession at the instance of the plaintiff and the existence of which equitable estate afforded no defence in the court of law.

2. Where the defendant in ejectment purchased the *locus in quo* by parol agreement from the predecessor in title of the plaintiff and paid the full consideration of the purchase and entered into possession by consent of the vendor, the statute of frauds is not a bar to the existence of an equitable estate in the purchaser. A subsequent purchase of the land from the record owner by the plaintiff in ejectment, at a time when the defendant in ejectment was in visible possession under his prior purchase, is with constructive notice of the equitable estate of the defendant and constitutes the subsequent purchaser a trustee of the legal estate for the benefit of the prior purchaser. As such trustee the subsequent purchaser can maintain an action of ejectment against his *cestui que trust*, and the latter can only defeat recovery in a court of equity.

3. The fact that the *locus in quo* was a highway, and that the possession of defendant consisted of the occupancy of the highway with a steam railway, does not militate against the application of the principles defined.

On order to show cause why a preliminary injunction should not issue. Heard on bill, answer and affidavits.

Alfred Johanson and wife, two of the present defendants, are in possession of and claim to own certain lots of land on the north side of Salem street, between Burlington street and Broadway, Gloucester, and claim to own the fee of Salem street, in front of the lots, to the centre line of that street, subject alone to the servitude occasioned by the public highway. Complainant is a railway corporation, and the line of its railway is located in part on that part of the street between the lots of Johanson and wife and the centre line of the street. An action of ejectment was brought by the Johansons against complainant, in the supreme court of this state, to enforce the removal of complainant's railway from that part of the street referred to. Judgment was rendered in their favor and the judgment was afterwards affirmed by the court of errors and appeals. *64 Atl. Rep. 1061.* The writ of ejectment is now in the hands of the sheriff of Camden county for execution. Complainant now seeks to enjoin the execution of that writ.

*Mr. William T. Read* and *Mr. Charles V. D. Joline,* for the complainant.

*Mr. Francis D. Weaver* and *Messrs. Bleakly & Stockwell,* for the defendants.

LEAMING, V. C.

This cause, as I view it, presents but a single question: Has complainant an estate in the *locus in quo* which will entitle it to the protection of a court of equity and of which it could not have availed itself as a defence in the action of ejectment.

Complainant asserts that, in the year 1875, the Gloucester Land Company was the owner of a large tract of land comprising the premises in dispute, and was also the owner of important manufacturing interests in that vicinity, and by reason of such ownership was desirous of having the railway in question pass over the route now in dispute for the purpose of enhancing

the value of its lands and manufacturing interests, and to that
end requested complainant to abandon a more direct and less
expensive route, which had been adopted, and to adopt the route
desired by the land company, and agreed with complainant that
if complainant would do so the land company would not charge
for the land to be occupied and would convey the same to the
complainant, and that complainant accordingly agreed with the
land company to that effect and changed its route and con-
structed its road over the lands of the land company pursuant
to that agreement (including the part of the route now in dis-
pute) at a greatly increased cost to complainant, and that since
that year (1875) complainant has been continuously operating
its road over that route, but that the land company has never
delivered the deed as agreed. No written agreement or memo-
randa was executed.

The pleadings admit that in the year 1886 the Gloucester Land
Company conveyed the lots now owned by defendants to Esther
E. Gibbon, by deed describing the lots as abutting on Salem
street, and that in the year 1903 Esther E. Gibbon conveyed, by
a similar description, to defendants.

If these allegations of the bill are to be at this time accepted
as facts, complainant's position is that of a purchaser of lands,
by parol agreement, with possession delivered by consent of the
vendor, and with the agreed consideration of the purchase paid.
The allegations of the bill fully cover these elements. The con-
templated benefits to be received by the land company accrued
to it by the location of the road as agreed, and the increased
expenditures have been incurred by complainant as a considera-
tion for the promised grant of the land occupied. The statute
of frauds is not a bar to the existence of an equitable estate in
the purchaser of lands under these conditions, for the contract
has been fully performed upon the part of both parties except
as to the delivery of the deed. *Young* v. *Young, 45 N. J. Eq.
(18 Stew.) 27, 34.* The executed agreement, before delivery of
the deed, constitutes the purchaser the owner of the equitable
title to the lands, and the vendor holds the legal title as trustee
for the purchaser. Courts of equity deal with these equitable
interests as vested equitable estates in land. Before the contract

is executed by conveyance the lands are devisable by the vendee, and descendible to the heirs as real estate, and the personal representatives of the vendor are entitled to any unpaid purchase-money. A purchaser from the vendor trustee, with notice of the trust, stands in the place of his vendor, and is as much a trustee as he was. *Haughwout* v. *Murphy, 22 N. J. Eq. (7 C. E. Gr.) 531, 546; Brinton* v. *Scull, 55 N. J. Eq. (10 Dick.) 747, 756.*

Under the facts stated defendants must be regarded as purchasers with notice of the rights of complainant, as already defined. At the date of the conveyance from the land company to Gibbon, complainant had been in actual occupancy of the land for over ten years, and at the date of the conveyance from Gibbon to defendants for over twenty-five years. This visible possession of complainant operated to put defendants upon inquiry as to the rights under which complainant held possession. *Baldwin* v. *Johnson, 1 N. J. Eq. (Sax.) 441, 455; Dean* v. *Anderson, 34 N. J. Eq. (7 Stew.) 496, 505; Hodge's Executors* v. *Amerman, 40 N. J. Eq. (13 Stew.) 99; DeLuze* v. *Bradbury, 25 N. J. Eq. (10 C. E. Gr.) 70; Atlantic City* v. *New Auditorium Pier Co., 63 N. J. Eq. (18 Dick.) 644, 668; S. C. reversed, 67 N. J. Eq. (1 Robb.) 610, 617.*

An equitable estate of the character named is not available as a defence to an action of ejectment by the owner of the legal title. A trustee may recover in ejectment from his *cestui que trust;* the latter can make no defence at law, but must seek his remedy in equity. *Commissioners* v. *Johnson, 36 N. J. Eq. (9 Stew.) 211, 212; Nibert* v. *Baghurst, 47 N. J. Eq. (2 Dick.) 201, 204; Roe* v. *Reade, 8 T. R. 122, 123; Shine* v. *Gough, 1 Ball & B. 436, 445.*

It follows that complainant's bill is well founded unless another feature, not yet referred to, operates to defeat the equitable estate already defined. It must be, at this time, accepted as a fact that in the year 1875, when complainant contracted with the land company, the *locus in quo* was a public highway. The affidavits filed on behalf of defendants render it impossible, under the well-defined rules touching hearings for preliminary injunctions, to proceed upon any different assumption of fact.

It follows that the contract of the land company was to convey to complainant the fee in a public highway (at a time when the land company was the owner of the abutting property and owner of the fee of the highway subject to the .public servitude), to enable complainant to construct and operate its railway longitudinally on the highway. I am unable to perceive that this fact operates to defeat complainant's right to assert its equitable title in this court for relief against the action of ejectment at law brought by defendants. While the operation of a steam railway longitudinally on a public highway is inconsistent with the use with which the land is burdened as a highway, and cannot be justified except by legislative authority (*Burlington* v. *Pennsylvania Railroad Co.*, 56 N. J. Eq. (11 Dick.) 259; 58 N. J. Eq. (13 Dick.) 547), yet the right of the abutting owner to maintain ejectment for its removal is necessarily based upon the fact that he is owner of the fee in the highway subject only to the public servitude, and is in no way based upon his right, as a member of the public, to remove the railway as a public nuisance. *Bork* v. *United New Jersey Railroad and Canal Co.*, 70 N. J. Law (41 Vr.) 268. It follows that if the equitable title to the fee in the highway in question passed to complainant from the predecessor in title of defendants, and defendants purchased with notice of such equitable title, equity should not permit an action at law which is wholly based upon the legal title and which action cannot take the equitable title into consideration, to dispossess complainant, until complainant shall have been privileged to assert his equitable title in this court as a bar to the possessory action. I know of no principle of law or policy which forbids the segregation of the fee of the highway from the abutting properties. A conveyance of land abutting on a highway embraces the fee to the centre of the highway only when a contrary intent is not expressed in the deed. *Salter* v. *Jonas, 39 N. J. Law (10 Vr.) 469.* I do not find *Atlantic City* v. *New Auditorium Pier Co.*, as reported in 67 N. J. Eq. (1 Robb.) 610, to militate against the view here taken that defendants were purcha(r)ers under conditions which charged them with the duty of making inquiry which should have resulted in the discovery of complainant's equitable estate in that part of the premises which

defendants were purchasing which was occupied by the highway. In the decision referred to the view is forcefully expressed that nothing referable to the then existing physical conditions could have naturally suggested a covenant contemplating that the land and view below high-water mark of the ocean should remain unobstructed; that the absence of structures there was not naturally referable to restrictive covenants. The present case presents radically different conditions. The purchase which was being made by defendants included the land extending to the centre line of the highway, and I am unable to perceive how one can thus purchase property abutting upon a highway in which a steam railway is being longitudinally operated without being apprised of a probable right upon the part of the railway company emanating from a predecessor in title of the land in question. The purchaser could not properly attribute the occupancy to mere legislative permission, for such permission could not confer the right of occupancy until a corresponding right should have first been acquired from the owner of the fee.

The change of complainant's railway from a narrow-gauge to a broad-gauge road, in the year 1885, with a possible widening of the strip of ground actually occupied, cannot be held to operate to defeat complainant's present remedy. It is not clear that the additional ground which may have been occupied by the road by reason of this change of gauge was not covered by the spirit of the original agreement, and the deed from the land company to Gibbon was subsequent to this change. If, in this change of gauge, ties were lengthened beyond the length contemplated by the original agreement to convey, that fact is only important *pro tanto*. The writ sought to be enjoined runs against the entire structure.

It has been urged that the denial, in the answer, of the fact that the original agreement on which the bill is based was ever made, should operate to defeat the application for a preliminary injunction. The evidence of the original agreement, as disclosed by the bill and its accompanying affidavits, is not as satisfactory as might be desired. While I have not been entirely free from doubt as to its sufficiency, I have determined to accept it as competent to establish the facts averred. The effort on the part of

22

defendants to negative these averments is wholly without probative force, as no positive knowledge is disclosed or claimed in the denials made. Under these circumstances the averments of the bill should not be treated as overthrown.

A preliminary injunction, in accordance with the prayer of the bill, will be advised.