The complainant, Ruth Boorstein, and the defendant William Boorstein were married in 1933. One child, Seth Alan, was born of the marriage, and is now of the approximate age of nine years. After their marriage, Ruth and William lived at the home of William's parents, the defendants herein, Rose and Harris Boorstein. They remained with Rose and Harris for about two years, when they rented an apartment in which they resided until about March, 1937.
Shortly after the birth of their child aforesaid, or about September, 1936, complainant says the defendants Rose and Harris offered to build a home for her and her husband, William, at 94 West Thirty-ninth Street, Bayonne, New Jersey. She says she and her husband accepted the offer, whereupon a home was erected upon the premises aforesaid by defendants *Page 266 
Rose and Harris, who presented it to her and William by word of mouth. They thereupon entered into possession of the premises.
The defendant William in November, 1943, filed a petition for divorce in this court against this complainant, charging desertion. She filed an answer and counter-claim for separate maintenance in the suit. A final decree was entered in the proceedings on November 29th, 1945, in which Advisory Master Thomas J. Stanton, advised a dismissal of the petition of William, and that he pay Ruth $30 weekly for her maintenance and support, and $20 weekly for the support of the child of the marriage. The custody of the child was given to complainant with visitation privileges to William.
On William's appeal to the Court of Errors and Appeals from the decree entered in his suit, that court on May 20th, 1946, affirmed the decree. Boorstein v. Boorstein, 138 N.J. Eq. 143;47 Atl. Rep. 2d 319.
Rose, the defendant, instituted a dispossession suit against the complainant Ruth and her husband, William, the defendant herein, in the Bayonne District Court in or about October, 1945. In the affidavit filed in that suit, which conferred jurisdiction on the District Court, Rose swore that she is the owner and landlord of the premises in question at 94 West Thirty-ninth Street, and that Ruth, the complainant, and William, her husband, are in occupancy and possession of the premises under an agreement made by her with Ruth and William in March, 1937, whereby she rented the premises to Ruth and William on a monthly basis of $25 which was subsequently raised to $50.
The jurisdictional affidavit further states that Ruth and William entered into possession and that they now are in rent arrears in the amount of $1,100.
After the summons in the District Court proceedings had been served on the complainant Ruth, the action was set for trial. At the trial this defendant Rose, through her counsel, announced to the court that she wished to discontinue the action against Ruth and to proceed only against Ruth's husband, William. Ruth's counsel objected to the motion but the judge overruled the objection and granted Rose's application *Page 267 
for a discontinuance against Ruth. The action then proceeded against William, and judgment was rendered against him.
Ruth's counsel was not permitted to participate at the trial. William testified as a witness for the plaintiff, his mother, Rose Boorstein. His father, Harris, also testified for the plaintiff.
In effect, they said that the premises were rented to William. No evidence was offered, or mentioned, in support of the contents of the jurisdictional affidavit of the rental of the premises to Ruth.
There was no testimony at the trial that William was then occupying the premises. In fact, the defendant William is living with his parents, Harris and Rose Boorstein, the defendants. He has been sleeping at his parents' home since March, 1943. From September, 1941, to March, 1943, he did not take his meals with his wife, but ate at his parents' home.
No explanation appears to have been given of the conflicts between the statements of Rose in the jurisdictional affidavit and the sworn testimony given by Harris and William.
The complainant charges that the District Court judgment for possession procured by Rose against William was obtained through fraud on the part of Harris, acting as agent for Rose, in collaboration with the fraud of William, their son.
She further charges that Rose, Harris and William fraudulently colluded with each other in obtaining the judgment for possession for the purpose of denying to her, her constitutional prerogative of having a hearing before a court of competent jurisdiction to pass upon her asserted right to continue in possession of the premises; and that the action of these defendants in the District Court proceedings was for the purpose of carrying out the fraudulent scheme of having her evicted from the premises in question without trial and without due process of law.
She further charges that the statements in the jurisdictional affidavit filed by Rose were fraudulently made for the purpose of attempting to give the District Court jurisdiction to dispossess William, who was not in possession, and who was colluding with his mother as part of a fraudulent plan to *Page 268 
evict her without a hearing. She contends she will suffer irreparable injury if the defendant Rose is permitted to enforce the judgment for possession. She prays for an injunction restraining the defendants from enforcing the judgment.
At the final hearing herein motions to strike were made by William, counsel pro se, and by counsel for Rose and Harris. William moved to strike the bill for the following reasons:
"1. The said Bill of Complaint discloses no cause of action in that:
"(a) Complainant, by her Bill of Complaint, seeks by a decree of this Court to protect her alleged rights in real estate founded upon an alleged oral gift of said real estate, contrary to and in violation of Sections 2 and 5 of the Statute of Frauds (R.S. 25:1-2 and 25:1-5; N.J.S.A. 25:1-2 and 25:1-5).
"(b) Complainant, by her Bill of Complaint, seeks by a decree of this Court to protect her alleged rights in real estate founded upon an alleged oral agreement which the said Bill discloses is not supported by any valid or legal consideration, and the said agreement is a nudum pactum.
"(c) The Bill of Complaint does not disclose the invasion of any legal right of the complainant which could justify equitable intervention.
"(d) The Bill of complaint discloses no cause of action for equitable relief.
"2. The Bill of Complaint not only does not disclose that irreparable injury will ensue to the complainant as a result of the denial of injunctive relief, but it affirmatively shows that the complainant will not suffer any irreparable injury which can confer jurisdiction on a court of equity to grant the relief sought by the Bill of Complaint."
In the alternative, the defendant William moved for an order dismissing him as a party to this suit, upon the ground that he is neither a necessary nor a proper party hereto.
Counsel for Rose and Harris moved for an order to strike the bill on the following grounds:
"1. The Bill of Complaint fails to disclose an equitable cause of action.
"2. The Bill of Complaint alleges a verbal gift of Real *Page 269 
Estate which under the statute of frauds must be in writing and valid gift of such Real Estate can, therefore, not be established.
"3. The Bill of Complaint fails to disclose that irreparable injury will result from failure to grant injunctive order.
"4. Complainant has an adequate remedy at law granted by statute.
"5. The Bill of Complaint attempts to collaterally attack the judgment of the Bayonne District Court, a Court of competent jurisdiction.
"6. By statute the Bayonne District Court has jurisdiction to enter a judgment for possession as against defendant, William Boorstein."
The two motions were renewals of motions made and denied on January 22d 1946, without prejudice. The renewed motions are hereby denied.
The allegations of the complainant's bill were supported by the testimony of the complainant, and were not controverted by the defendants. No witnesses were offered by the defendants.
The evidence submitted by the complainant bore all the earmarks of truth. She told a straightforward and convincing story.
While I am satisfied the statute of frauds bars the complainant from the title to the premises aforesaid because the agreement was not reduced to writing, nevertheless, I feel that complainant is entitled to an injunction restraining the defendants from enforcing the judgment, which, in my opinion, was fraudulently obtained.
The complainant contends that she came into occupancy of the premises at the invitation of the defendants Rose and Harris, who stated per verba de praesenti that they were making a gift of the property to her and her husband, which they accepted. No testimony was offered disputing the manner in which Ruth became an occupant of the premises, and no testimony was adduced to show Ruth was ever notified that her occupancy of the premises by invitation of the defendants was, or is, at an end. I think under the proofs she is clearly entitled to remain in the possession of the premises as a peaceful *Page 270 
occupant by invitation until notified by the defendants that her status as such is at an end.
She is in possession as an invitee and she maintains that status until it is legally terminated or changed by the owner. Even though her position is doubtful or debatable, she is entitled, I believe, to a hearing and to have a court of competent jurisdiction pass upon the questions involved.
See Red Oaks, Inc., v. Dorez, Inc., 120 N.J. Eq. 282;184 Atl. Rep. 746, wherein Mr. Justice Bodine, speaking for the Court of Errors and Appeals, among other things, said:
"Authorities showing when a court of equity may enjoin a party from enforcing a judgment at law are collected in CommercialNational Trust and Savings Bank v. Hamilton, 99 N.J. Eq. 492;affirmed, 101 N.J. Eq. 249. The rule there stated is: `The Court of Chancery will not relieve against a judgment at law on the ground of its being contrary to equity, unless the defendant in the judgment was ignorant of the facts in question pending the suit, or the facts could not have been received as a defense, or unless he was prevented from availing himself of the defense by fraud or accident, or the act of the opposite party, unmixed with negligence or fraud on his part; and that it matters not whether the defendant has presented to the law court the matter which he claims as the ground of his relief or through his negligence has failed to present it.' Kinney v. Ogden, Adm'r, 3 N.J. Eq. 168;Reeves v. Cooper, 12 N.J. Eq. 223; Brick v. Burr, 47 N.J. Eq. 189; Woolsey v. Woolsey, 71 N.J. Eq. 609; affirmed, 72 N.J. Eq. 898; Clark v. Board of Education, 76 N.J. Eq. 326. In the latter case the rule is summarized as follows: `Equity interferes with judgments at law only where there has been fraud, or mistake, or accident in procuring the judgment and where the legal remedies are inadequate.' In Woolsey v. Woolsey, supra, Mr. Justice Swayze, speaking for the Court of Errors and Appeals, defines the rule as follows: `Having thus, by acts of omission and commission, led to the result of which they complain, they ought not to be allowed to set it aside. To permit that would amount to permitting suitors to experiment with the court, and if defeated in one court to resort to another.'" *Page 271 
See, also, McGann v. LaBrecque Co., Inc., 91 N.J. Eq. 307;109 Atl. Rep. 501.
The prayer for an injunction restraining the defendants from enforcing the judgment for possession obtained in the District Court, or from taking any steps with respect to the judgment, will be advised and the relief prayed for will be granted.